IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ELENA COLQUITT,<br><br>      Plaintiff,<br><br>v.<br><br>VENDORMATE, INC.,<br><br>      Defendant. | CIVIL NO. |

## COMPLAINT

### INTRODUCTION

Plaintiff Elena Colquitt, by and through the undersigned counsel, brings this Complaint against Defendant and states and alleges as follows:

### PARTIES

1. Plaintiff Elena Colquitt is a resident of Atlanta, Georgia.

2. Defendant Vendormate, Inc. is a domestic Georgia corporation with its principal office address, as recorded with the Georgia Secretary of State, being 3445 Peachtree Rd NE Suite 300, Atlanta, GA 30326.

3. Defendant may be served with the summons and the complaint in this civil action by service upon its registered agent, CT Corporation System at 1201 Peachtree Street NE, Atlanta, GA 30361.

## JURISDICTION AND VENUE

4. Plaintiff brings this Action against Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") for failure to pay overtime compensation at the proper rate as required by the FLSA, and, therefore, this Court has original jurisdiction over this case based on 28 U.S.C. § 1331.

5. Under 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Georgia because: (1) Defendant resides within the state of Georgia, and, more specifically, Defendant resides within the Northern District of Georgia and (2) a substantial part of the events or omissions giving rise to Plaintiff's claims, as described in this complaint, occurred within the Northern District of Georgia.

6. Defendant provides technology and compliance-monitoring services throughout the United States to assist companies (in particular, healthcare systems) in their relationships with vendors.

7. Therefore, Defendant has been and continues to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

8. Defendant has been and continues to be an "employer" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

9. During her employment with Defendant, Plaintiff was regularly engaged in interstate commerce and/or in the production of goods for commerce.

10. Defendant has had an annual gross volume of sales made or business done in excess of $500,000.00 for the time period relevant to this lawsuit.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIM FOR OVERTIME

11. Plaintiff was employed by Defendant from approximately March 2008 through October 2009.

12. Plaintiff's initial starting annual salary was $35,000.00.

13. In approximately July 2008, Plaintiff received a raise to $45,000.00.

14. In approximately July 2009, Plaintiff received a raise to $48,000.00, which was her annual salary when her employment was terminated.

### Plaintiff's Employment as a Support Analyst

15. From approximately March 2008 through April 2009, Defendant employed Plaintiff as a Support Analyst.

16. As a Support Analyst, Plaintiff's primary duty was to address communications from vendor representatives regarding complaints, questions, and service requests.

17. As a Support Analyst, Plaintiff would respond to communications from vendor representatives using email and Salesforce, which is a customer relationships management application.

18. Typical types of communications that Plaintiff received from vendor representatives included complaints of not being able to log into vendor registration programs, not being able to print the required badge that would enable the vendor representative to go onsite of a healthcare system, and not being able to go onsite of a healthcare system because of missing credentials.

19. In responding to these complaints, Plaintiff would use standard templates of common responses ("Solutions") that were prepared and/or approved by Plaintiff's support team manager, John Caliri.

20. Solutions were located in the Salesforce application.

21. If Plaintiff received any complaints that were not typical and could not be addressed with one of the standard Solutions, Plaintiff was required to consult with her support team manager, John Caliri, to receive direction as to how to address the communication.

22. As a Support Analyst, Plaintiff was frequently required to work more than 40 hours per workweek, but she was not paid any additional compensation for this work.

23. Throughout Plaintiff's employment as a Support Analyst, Defendant had a policy and practice of not recording the actual hours Support Analysts worked, and Plaintiff was subject to this policy and practice.

### Plaintiff's Employment as an Account Manager

24. From approximately April 2009 through October 2009, Plaintiff was employed by Defendant as an Account Manager.

25. As an Account Manager, Plaintiff had certain vendor accounts assigned to her.

26. As an Account Manager, Plaintiff's primary duty was to address communications from the points of contact for her vendor accounts regarding complaints, questions, and service requests.

27. As an Account Manager, Plaintiff would respond to communications from her points of contact using email and Salesforce.

28. Typical types of communications that Plaintiff received from her points of contact were similar to those she received from vendor representatives as a Support Analyst, but communications from her points of contact were generally

made on behalf of the vendor, one of the vendor's representatives, or a group of the vendor's representatives rather than directly from a single vendor representative.

29. For example, typical types of communications Plaintiff received from her points of contact included complaints that the vendor's representatives were not able to log into vendor registration programs, were not able to print the required badge that would enable the vendor's representatives to go onsite of a healthcare system, and were not able to go onsite of a healthcare system because of missing credentials.

30. Plaintiff also received communications from her points of contact regarding payment and pricing issues.

31. Similar to when she served as a Support Analyst, Plaintiff would use standard templates of common responses, i.e., Solutions, to respond to communications from her vendor account points of contact.

32. Many of the Solutions Plaintiff used as an Account Manager were the same Solutions that she had used as a Support Analyst, though some of the Solutions were slightly modified, especially those related to payment and pricing issues.

33. If Plaintiff received any complaints from a point of contact that were not a regular occurrence and could not be addressed with one of the standard

Solutions, Plaintiff was required to consult with her supervisor, Kristine Hayes, Vice President of Vendor Services, to receive direction as to how to address the communication.

34. As an Account Manager, Plaintiff was frequently required to work more than 40 hours per workweek, but she was not paid any additional compensation for this work.

35. Throughout Plaintiff's employment as an Account Manager, Defendant had a policy and practice of not recording the actual hours Account Managers worked, and Plaintiff was subject to this policy and practice.

## COUNT I

### FAILURE TO PAY PLAINTIFF OVERTIME WHEN SHE WAS EMPLOYED AS A SUPPORT ANALYST

36. Defendant failed to maintain accurate records of Plaintiff's actual hours worked as a Support Analyst.

37. Therefore, Defendant failed to comply with the record-keeping requirements of the FLSA.

38. Defendant suffered or permitted Plaintiff to perform compensable work before and after her shift when she was employed as a Support Analyst.

39. For example, Plaintiff frequently would work from home after the end of her shift and throughout the night.

40. Defendant installed both Outlook (Defendant's business email application) and Salesforce on Plaintiff's personal laptop so that she could work from home.

41. Plaintiff would use Salesforce from home to respond to communications from vendor representatives, and she would use her business email account to communicate with her supervisor and other employees of Defendant.

42. Plaintiff's work from home as a Support Analyst frequently resulted in her working more than 40 hours in a workweek.

43. However, Defendant failed to pay overtime wages to Plaintiff at the appropriate rate as required by the FLSA and its implementing regulations.

44. Defendant's failure to pay proper overtime wages for each hour worked over 40 per workweek was intentional and willful within the meaning of 29 § U.S.C. 255.

45. On information and belief, Defendant classified Plaintiff as exempt from the requirements of the FLSA. However, Plaintiff did not meet the requirements for any exemption.

46. For example, Plaintiff did not supervise any employees.

47. As another example, Plaintiff performed her primary duty as a Support Analyst by using standard templates to respond to communications from vendor representatives, and she had to obtain approval from her supervisor to deviate from those templates.

48. Therefore, in performing her primary duty as a Support Analyst, Plaintiff did not exercise discretion and independent judgment with respect to matters of significance.

49. Plaintiff is entitled to recover all unpaid overtime wages from Defendant that were secured by the FLSA as well as an equal amount in liquidated damages.

50. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

## COUNT II

### FAILURE TO PAY PLAINTIFF OVERTIME WHEN SHE WAS EMPLOYED AS AN ACCOUNT MANAGER

51. Defendant failed to maintain accurate records of Plaintiff's actual hours worked as an Account Manager.

52. Therefore, Defendant failed to comply with the record-keeping requirements of the FLSA.

53. Defendant suffered or permitted Plaintiff to perform compensable work before and after her shift when she was employed as an Account Manager.

54. For example, Plaintiff frequently would work from home after the end of her shift and into the evenings.

55. Plaintiff would use Salesforce from home to respond to communications from the points of contact for her vendor accounts, and she would use her business email account to communicate with her supervisor and other employees of Defendant.

56. Plaintiff's work from home as an Account Manager resulted in her working more than 40 hours in a workweek.

57. However, Defendant failed to pay overtime wages to Plaintiff at the appropriate rate as required by the FLSA and its implementing regulations.

58. Defendant's failure to pay proper overtime wages for each hour worked over 40 per workweek was intentional and willful within the meaning of 29 § U.S.C. 255.

59. On information and belief, Defendant classified Plaintiff as exempt from the requirements of the FLSA. However, Plaintiff did not meet the requirements for any exemption.

60. For example, as an Account Manager, Plaintiff did not supervise any employees.

61. As another example, Plaintiff performed her primary duty as an Account Manager by using standard templates to respond to communications from the points of contact for her accounts, and she had to obtain approval from her supervisor to deviate from those templates.

62. Therefore, in performing her primary duty as an Account Manager, Plaintiff did not exercise discretion and independent judgment with respect to matters of significance.

63. Plaintiff is entitled to recover all unpaid overtime wages from Defendant that were secured by the FLSA as well as an equal amount in liquidated damages.

64. Plaintiff is also entitled to attorney's fees and costs incurred in connection with this claim.

**PRAYER FOR RELIEF**

Based on the allegations set forth in this complaint and the evidence as it is developed in this case, Plaintiff respectfully prays that:

- the Court enter judgment in favor of Plaintiff as to each of Plaintiff's claims;

- the Court award Plaintiff her unpaid overtime wages, an equal amount in liquidated damages, and any and all other damages as provided under the law and as requested in each of Plaintiff's claims;

- the Court award Plaintiff her attorney fees and litigation costs as provided under the law and as requested in each of Plaintiff's claims; and

- the Court grant Plaintiff all other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  March 31, 2011

Respectfully submitted,

s/G. Blake Andrews
Gary Blaylock "Blake" Andrews, Jr.
Georgia Bar No. 019375
Blake Andrews Law Firm, LLC
2221 Peachtree Road NE Suite X5
Atlanta, GA 30309
Tel: 770-828-6225

13

Fax: 866-828-6882
blake@blakeandrewslaw.com

13